UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>  v.<br><br>OMAR G. FIRESTONE, Individually, and Co-Trustee of the Ghiada M. Firestone Living Trust, Beneficial Transferee of the Ghiada M. Firestone Living Trust and the Statutory Executor of the estate of GHIADA M. FIRESTONE,<br><br>    Defendant. | CASE NO. 2:22-cv-01201-TL<br><br>ORDER ON MOTION<br>TO QUASH CORRECTED<br>WRIT OF EXECUTION |

    This is an action brought by the United States to enforce a judgment against Defendant Omar Firestone, a taxpayer, and to levy a specific Italian violincello ("the Cello") for outstanding tax liabilities. This matter is before the Court on Defendant's Motion to Quash United States' Writ of Execution and Exclude Cello from Collections. Dkt. No. 24. Having reviewed Plaintiff's response (Dkt. No. 25) and the relevant record, the Court DENIES the motion.

ORDER ON MOTION
TO QUASH CORRECTED
WRIT OF EXECUTION - 1

### I. BACKGROUND

On January 17, 2012, the Internal Revenue Service ("IRS") notified Mr. Firestone that the estate of Ghaida M. Firestone ("the Estate") had been selected for an audit. Dkt. No. 13-1. Mr. Firestone was the executor of the Estate. *See* Dkt. No. 13-2. On April 16, 2013, the IRS informed Mr. Firestone that the recomputed estate tax liability for the Estate through April 22, 2013, was $1,869,254.00, including penalty and interest. *Id.* On May 17, 2013, Mr. Firestone created "The Firestone Irrevocable Cello Trust" ("the Trust"), ostensibly transferring the Cello from Mr. Firestone as the Settlor to Mr. Firestone as the Trustee. Dkt. No. 13-5.[1] On April 14, 2014, the Estate stipulated to additional estate tax liabilities. *See Firestone v. Comm'r of Internal Revenue*, No. 8283-14, Dkt. No. 1 (T.C. Apr. 14, 2014). Mr. Firestone failed to pay the tax assessment.

On January 2, 2019, the Government commenced an action against Defendant Omar G. Firestone to reduce an unpaid estate tax to judgment and foreclose on certain real property. *United States v. Estate of Ghaida Firestone*, No. C19-0003 (S.D. Cal. Jan. 2, 2019). This occurred after the Government took several steps to collect the estate taxes due. On March 4, 2021, the United States District Court for the Southern District of California granted a joint motion and entered judgment against Mr. Firestone in the amount of $2,537,554.16 plus statutory accruals and interest. *Id.*, Dkt. No. 44 (S.D. Cal. Mar. 4, 2021). On September 4, 2021, this Court registered the foreign judgment. *United States v. Firestone*, MC21-99, Dkt. No. 1 (W.D. Wash. Sept. 4, 2021).

---

[1] The Government asserts that "it is unclear whether the Cello was ever transferred to the Trust." Dkt. No. 25 at 3–4. A copy of the Trust agreement provided by Mr. Robert Cauer to the Government in 2017 does not include a "Schedule A" that identifies the property contained in the Trust. *See* Dkt. No. 13-4. A different copy of the Trust agreement provided by Mr. Firestone to the Government in 2021 *does* include a "Schedule A" but nothing is listed in the schedule. *See* Dkt. No. 13-5 at 8. However, that copy of the Trust agreement also includes an appraisal of an "aged cello" with "an oval picture painted on the back with 'Romae 1816' in the painting." *Id.* at 9. The appraisal valued the cello at $25,000. *Id.* That value is significantly lower than the appraisal by Mr. Cauer. *See* Dkt. No. 13-6.

ORDER ON MOTION
TO QUASH CORRECTED
WRIT OF EXECUTION - 2

On June 2, 2022, the Government commenced the instant action as a miscellaneous matter by filing an Ex Parte Application for Writ of Execution. Dkt. No. 1. The Court granted the Government's request and issued the Government-prepared writ of execution that authorized the seizure of a "fine Italian violincello or cello circa 1816s" ("Cello") in order to collect on the foreign judgment. Dkt. Nos. 2–3. Upon motion by Mr. Firestone, the Court quashed the writ for failure to comply with the statutory requirement that it specify the date an enforceable judgment was entered due to a typographical error in the writ that had been overlooked. Dkt. Nos. 7, 17. Thereafter, the Government filed an Ex Parte Request for Corrected Writ of Execution. Dkt. No. 18. The Court granted the Government's request and issued the corrected writ. Dkt. Nos. 21–22.

Mr. Firestone now brings the instant motion to quash the corrected writ of execution. Dkt. No. 24. The Government opposes. Dkt. No. 25.

## II.   LEGAL STANDARD

The Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001–3308, establishes standards and procedures for the collection of debt owed to the United States. One available post-judgment remedy under FDCPA is a writ of execution: "All property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution." 28 U.S.C. § 3203(a); *see* Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise.").

Under FDCPA, "property" is broadly defined: "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))," with narrowly defined exceptions. 28 U.S.C. § 3002(12); *see United States v. Nat'l Bank of Com.*, 472 U.S. 713, 720 (1985) (observing that broad property language in statutes governing tax liens "reveals

on its face that Congress meant to reach every interest in property that a taxpayer might have"); *United States v. Bourseau*, No. C03-0907, 2009 WL 1072036, at *2 (S.D. Cal. Aug. 20, 2009) ("The sheer breadth of the definition reflects an effort to encompass any substantial interest a debtor has that might satisfy the judgment owed to the United States."). A debtor may claim statutory exemptions for their property. *See* 28 U.S.C. §§ 3202(d)(1), 3014.

### III.  DISCUSSION

Mr. Firestone moves to quash the writ of execution on two grounds: (1) the Government's action is barred by the statute of limitations at 28 U.S.C. § 3306(b)(1); and (2) the Cello is not his personal property. Dkt. No. 24 at 2.[2] Mr. Firestone has not claimed any exemptions under federal or state law.

**A.     Mr. Firestone's Standing to the Challenge the Writ**

As an initial matter, the Government argues that Mr. Firestone does not have standing to challenge the writ of execution. Dkt. No. 25 at 5–6. The Government points out that Mr. Firestone "claims the Cello does not belong to him but instead belongs to the Trust."[3] *Id*. at 5. Indeed, Mr. Firestone disclaims the Cello multiple times in his briefing. *See* Dkt. No. 24 at 2 ("Defendant is objecting to the seizure of property that does not personally belong to him . . . ."); *id*. ("The cello does not belong to Mr. Firestone and is not his personal property."); Dkt. No. 24-1 ¶ 11 ("[T]he cello is not my personal property.").

---

[2] Mr. Firestone's briefing is razor thin and provides almost no support for his arguments. The briefing for this motion, like Mr. Firestone's prior motion to quash (Dkt. No. 7), provides not even a single legal authority supporting his arguments. Rather, the briefing consists almost entirely of Mr. Firestone's three-page declaration and a one-page unsworn email from Mr. Robert Cauer, the broker of the Cello's sale. *See* Dkt. Nos. 24-1, 24-2. The motion essentially restates Mr. Firestone's declaration.

[3] Mr. Firestone also claimed in his prior motion to quash that "the cello does not belong to Mr. Firestone and is not his personal property." Dkt. No. 7 at 2.

Assuming Mr. Firestone's statements are true, he would not have standing to challenge the writ. *See United States v. Elliott*, 149 F. App'x 489, 494 (7th Cir. 2005) (holding that defendant had no right to challenge writ of garnishment under FDCPA where defendant claimed that funds did not belong to him); *United States v. Bradley*, No C08-0176, 2010 WL 11565398, at *2 (E.D. La. Aug. 27, 2010) ("[Defendant's] motion [to stay writ of garnishment under FDCPA] reveals that he seeks to litigate a third party's rights rather than his own."); *cf. United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995) (holding that third party made prima facie showing of standing to challenge writ of execution under FDCPA).

However, in the same briefing, Mr. Firestone claims that he has a life estate interest in the Cello. *See* Dkt. No. 24 at 2; Dkt. No. 24-1 ¶ 4. Further, the Government disputes Mr. Firestone's claim that the Cello is not his property. *See* Dkt. No. 25 at 5–9. And if it were true that Mr. Firestone did not have a substantial interest in the Cello, then the Government would not be entitled to a writ of execution in the first place. *See* 28 U.S.C. § 3203(a). Therefore, the Court will address Mr. Firestone's arguments regarding the statute of limitations as well as whether Mr. Firestone has an interest in the Cello such that a writ of execution may issue.[4]

## B.     Statute of Limitations

Mr. Firestone argues the instant action is governed by the six-year statute of limitations at 28 U.S.C. § 3306(b)(1), which is contained in FDCPA and applies to actions to set aside or void a transfer by a debtor that is "fraudulent" and done "with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A); *see* Dkt. No. 24 at 2; Dkt. No. 24-1 ¶¶ 9–10. In response, the Government argues the action is governed instead by the 10-year statute of

---

[4] It is unclear to the Court whether the absence of a "Schedule A" in the 2017 documents was an inadvertent mistake or evidence that a "Schedule A" was absent when the Trust was created. In the absence of clear evidence to the contrary, the Court assumes that the documents provided by Mr. Firestone himself in 2021 are accurate and that the Cello was properly transferred to the Trust for purposes of this motion. *See supra* n.1.

1 limitations at 26 U.S.C. § 6502(a)(1), which is found in the Internal Revenue Code ("IRC") and

2 applies to actions to collect assessed taxes. Dkt. No. 25 at 12–13.

3       Here, both Parties miss the mark. Contrary to Mr. Firestone's assertion, the instant matter

4 does not include a fraudulent transfer claim under 28 U.S.C. § 3304(b)(1), even if the

5 Government questions the validity of the Trust in its response to his motion. Contrary to the

6 Government's assertion, however, the instant matter is also not an action to collect taxes under

7 the IRC but rather an action to collect debt under the FDCPA.[5]

8       Instead, the Government sought and obtained a writ of execution pursuant to 28 U.S.C.

9 § 3203 to collect on a judgment. Dkt. Nos. 18, 21. "The FDCPA provides no time limit for the

10 collection of debts by writ of execution." *United States v. Gianelli*, 543 F.3d 1178, 1183 (9th Cir.

11 2008) (holding that FDCPA preempts California state law precluding enforcement of a

12 restitution judgment after 10 years); *see also United States v. Pierce*, 231 B.R. 890, 893

13 (E.D.N.C. 1998) ("[T]his silence cannot be construed as unintentional, but rather as the intention

14 for execution procedures to track the indefinite life of a judgment in favor of the

15 [Government]."). Therefore, the instant matter is not barred by a statute of limitations.

16 **C.    Whether Mr. Firestone Has a Substantial Interest in the Cello**

17       In determining whether a property right falls within FDCPA's definition of property,

18 "'the important consideration is the breadth of the control the taxpayer could exercise over the

19 property,' which we assess with reference to the state law governing the right." *United States v.*

---

[5] The Government cites *United States v. Univoz, Inc.* for the proposition that "where the United States seeks to collect taxes, even where fraudulent transfer has been alleged, courts have held that the statute of limitations under the Internal Revenue Code applies." No. C12-4437, 2012 WL 13164389, at *3 (C.D. Cal. Dec. 27, 2012). But *Univoz* was an action to reduce tax assessments to judgment, to impose transferee liability, and alternatively, to set aside a fraudulent transfer of property—not, as here, to obtain a writ of execution to collect on a judgment already entered. *Id*. at *1; *see id.*, Dkt. No. 1 (C.D. Cal. May 22, 2012) (complaint). Further, the *Univoz* court explicitly did not reach the issue of "whether the statute of limitations under 26 U.S.C. § 6502(a)(1) applies to tax collection actions *seeking a remedy under the FDCPA itself* . . . ." *Id*. at *4 n.5 (emphasis added).

*Harris*, 854 F.3d 1053, 1055 (9th Cir. 2017) (quoting *Drye v. United States*, 528 U.S. 49, 61 (1999)); *see United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1131 (D.C. Cir. 2016) ("[T]he FDCPA by its terms 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law." (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002))). Here, the Trust was created in California (Dkt. No. 13-5 at 6), and the Trust agreement states that the laws of the State of California "shall govern the validity, construction, interpretation, and administration" of the Trust. *Id.* ¶ 5.3. Therefore, the Court applies California law. *See In re Zukerkorn*, 484 B.R. 182, 189 (B.A.P. 9th Cir. 2012) ("Federal courts in the Ninth Circuit and California state courts both look to the Restatement (Second) of Conflicts of Law . . . for the choice of law rules."); Restatement (Second) of Conflict of Laws §§ 268, 270, 272 (Am. L. Inst. 1971) (stating that the construction, validity, and administration of an inter vivos trust is generally determined by the local law of the state designated by the settlor in the trust instrument). In doing so, the Court finds that Mr. Firestone holds a substantial interest in the Cello because he possesses both present equitable and legal interests in personal property that is held in trust. 28 U.S.C. § 3002(12).

First, in California, "trust beneficiaries hold 'the equitable estate or beneficial interest in' property held in trust and are 'regarded as the real owner[s] of [that] property.'" *Steinhart v. Cnty. of Los Angeles*, 223 P.3d 57, 72 (Cal. 2010) (quoting *Title Ins. & Trust Co. v. Duffill*, 218 P. 14 (Cal. 1923)); *see also Harris*, 854 F.3d at 1055–56 (holding that California taxpayer's interest as beneficiary of two irrevocable trusts is "property" under FDCPA). Per the Trust agreement, Mr. Firestone is the lifetime beneficiary of the Trust with permission "to possess and play the Cello . . . during his lifetime." Dkt. No. 13-5 ¶ 2.1. And Mr. Firestone himself admits that he has a "Life Estate interest" in the Cello. Dkt. No. 24 at 2.

1       Mr. Firestone seemingly tries to claim that someone else—Robert Cauer[6]—is the actual

2  beneficiary of the Trust, asserting in his declaration that the Trust was created "to compensate

3  Mr. Cauer, a Los Angeles string instrument dealer, for the loss of a sales commission when I

4  defaulted on the payments to the cello's owner . . . ." Dkt. No. 24-1 ¶ 3. Mr. Firestone also

5  attaches to his motion an unsworn email from Mr. Cauer in which he claims to "certify" that he

6  is the beneficiary of the Trust.[7] *Id.* at 4. Mr. Firestone's self-interested declaration and Mr.

7  Cauer's unsworn statement are insufficient to defeat the clear terms of the Trust agreement itself.

8  Mr. Firestone could have included Mr. Cauer as a beneficiary of the Trust agreement but chose

9  not to do so, naming only himself as a beneficiary. *See generally* Dkt. No. 13-5. He also could

10 have provided legal documentation such as a deed reflecting the transfer of interest to Mr. Cauer

11 but failed to do so.

12      The Ninth Circuit has held that "[i]n the context of trusts, [ ] equitable interest is

13 traditionally sufficient to confer ownership rights. Thus, under California law, trust beneficiaries

14 hold an equitable interest in trust property and are 'regarded as the real owner[s] of [that]

15 property.'" *In re Schwarzkopf*, 626 F.3d 1032, 1039 (9th Cir. 2010) (quoting *Steinhart*, 223 P.3d

16 at 72)). Further, "[i]t is well settled . . . that a person cannot by his own act create a trust that will

17 protect his property from the claims of his creditors." *In re Schneider's Estate*, 296 P.2d 45, 50

18 (Cal. Dist. Ct. App. 1956); *see also* Cal. Prob. Code § 15304(a) (prohibiting restraint on transfer

19 where settlor is beneficiary of trust created by settlor). Here, one month after learning about the

---

[6] Mr. Cauer was served as a party whom the Government believes had a property interest in the Cello. *See* Dkt. No. 25-2; 28 U.S.C. § 3202(c). To date, Mr. Cauer has not asserted an interest in the Cello and has not otherwise sought to modify any of the court orders regarding the writs of execution or otherwise intervened in this matter.

[7] Also, Mr. Cauer explained at his deposition that "[a]t this moment, [the Cello] is [Mr. Firestone's] property," and that Mr. Firestone was accordingly responsible for repairs, insurance, and other costs. Dkt. No. 13-10 at 52–53. This understanding is consistent with Mr. Firestone's ability to control and use the Cello, and with the public's perception of who owns the Cello. *See* Dkt. No. 13-7 at 2; Dkt. No. 14 ¶¶ 4, 7.

tax liability for the Estate, Mr. Firestone created a Trust where he is both the settlor and the beneficiary. Dkt. No. 13-5 at 1, ¶ 2.1. Therefore, the Court finds that Mr. Firestone holds an equitable interest in the Cello, and that the Cello is not protected from debt collection.

Second, "[l]egal title to property owned by a trust is held by the trustee[.]" *Stoltenberg v. Newman*, 101 Cal. Rptr. 3d 606, 611 (Cal. Ct. App. 2009) (quoting *Galdjie v. Darwish*, 7 Cal. Rptr. 3d 178, 187 (Cal. Ct. App. 2003)). Here, Mr. Firestone was not only the settlor, but he also made himself the sole trustee of the Trust. Dkt. No. 13-5 at 1. In other words, Mr. Firestone (the settlor) transferred the Cello to Mr. Firestone (the trustee). *Id.* ¶ 1.1. He made himself the sole lifetime beneficiary of the Trust. *Id.* ¶ 2.1. And he gave himself (as sole trustee) the power to "partition, allot, and distribute" the trust assets. *Id.* ¶ 3.5.11. Therefore, the Court finds that Mr. Firestone also holds a legal interest in the Cello since he holds legal title to it as the sole trustee of the Trust.

Holding both equitable and legal interests in the Cello, Mr. Firestone is properly regarded as a real owner of the Cello. *See In re Schwarzkopf*, 626 F.3d at 1039. Thus, Mr. Firestone has a substantial nonexempt interest in the Cello, which may be executed upon by the Government.[8]

///
///
///
///
///
///
///

---

[8] The Court need not reach the issues of whether the Trust is merely Mr. Firestone's nominee or alter ego, was created for unlawful purposes, or was self-settled in order to avoid creditors. Dkt. No. 25 at 7–10.

## IV. CONCLUSION

Accordingly, the Court DENIES Plaintiff's Motion to Quash United States' Writ of Execution and Exclude Cello from Collections. Dkt. No. 24. The Court further ORDERS that if the Cello is no longer within the United States, Mr. Firestone SHALL repatriate the Cello.

Dated this 12th day of June 2023.

Tana Lin
United States District Judge